# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

QIAN WILLIAMS,
      Plaintiff,

vs.

CHRIS MINIARD, *et al.*,
      Defendants.

Case No. 1:22-cv-1
Dlott, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

On October 21, 2021, incarcerated plaintiff Qian Williams initiated a pro se civil rights action in the Butler County, Ohio Court of Common Pleas. (*See* Doc. 1-1). Plaintiff sued Butler County, Ohio Sheriff Richard K. Jones[1] and deputy sheriff Chris Miniard for state and federal law violations based on an alleged use of force while plaintiff was a federal pretrial detainee on September 13, 2019. (*See id.*; Doc. 3). On January 3, 2022, defendants removed the action to this Court. (Doc. 1). This matter is before the Court the parties' cross-motions for summary judgment (Docs. 21, 33), their responses in opposition (Docs. 23, 38, and 46), and defendants' reply memorandum (Doc. 48).

## I. Factual Background[2]

In September 2019, plaintiff was a federal pretrial detainee who was held at the Butler County Jail pending the resolution of his federal criminal charges. When he entered the Butler County Jail in 2017, he had a history of a right ankle injury from a motorcycle accident, resulting in surgery to insert pins and a rod in his ankle. (Plf. Dep., Doc. 32, PAGEID 174-76, 188). Shortly after his booking, plaintiff submitted a "Butler County Sheriff's Office Medical Services Request for Inmate/Detainee Care," on November 3, 2017, complaining that the "screws in my ankel [sic] hurts." (Fisher Decl. Ex. 3; *see also* Plf. Dep. Doc. 32, PAGEID 230-31).

---

[1] Plaintiff amended his complaint to substitute Butler County Sheriff Jones for Butler County as a defendant.

[2] The factual background is undisputed unless otherwise noted.

On each day of his federal criminal trial, plaintiff was transported by Butler County sheriff deputies to the federal courthouse in Cincinnati, Ohio. On September 13, 2019, the third day of the trial, non-party Deputy Joseph Crawford prepared plaintiff for transport to the federal courthouse. (Doc. 33, Fisher Decl., Ex. 6). Plaintiff was brought from his cell into the jail's booking area, where Deputy Crawford then attempted to place the necessary restraints on plaintiff. (*Id.*).

Defendants have submitted a videorecording of the events at the jail's booking area. (Doc. 22, Butler County Jail video at 00:00-02:02). On the videorecording,[3] plaintiff is seated on a bench in the booking area of the jail with his hands restrained in handcuffs. Deputy Crawford stands in front of plaintiff. Defendant Miniard stands off to plaintiff's left side. Plaintiff and Deputy Crawford are talking. Deputy Crawford reaches down for plaintiff's right ankle as defendant Miniard walks from plaintiff's left side, in front of plaintiff, and over to plaintiff's right side. Defendant Miniard reaches down and pulls up plaintiff's right leg for Deputy Crawford to place a restraint on plaintiff's right ankle. Defendant Miniard forcefully pushes plaintiff's right leg down, moves to plaintiff's left side, and pulls up plaintiff's left leg. Shortly after defendant Miniard pulls plaintiff's left leg in the air, plaintiff slides from his seat onto the floor with his back against the floor. Defendant Miniard then secures a restraint on plaintiff's left ankle. Plaintiff is then lifted off the floor by defendant Miniard and seated at the bench. Defendant Miniard then walks plaintiff out of the booking area. Plaintiff can be seen limping or hobbling as defendant Miniard holds plaintiff's arm. (*Id.*).

Defendants present evidence that when Deputy Crawford attempted to place plaintiff's ankles in leg restraints, plaintiff resisted and made verbal demands that the deputy use the "bear

---

[3] The video recording is without audio.

claws," which are larger restraints than standard leg shackles. (Doc. 33, Fisher Decl., Ex. 6; Miniard Decl., ¶¶ 5-7). Deputy Crawford informed plaintiff that the traditional shackles "would be sufficient," but plaintiff "refused to put them on and pulled his legs away. . . ." (*Id*., Fisher Decl., Ex. 6). Plaintiff was given multiple direct commands to surrender his feet for shackling, but he refused. (*Id*., Fisher Decl., Ex. 5-6). Defendants present evidence that after plaintiff's right leg was shackled, defendant Miniard lifted plaintiff's left leg to apply a shackle. Defendants' witnesses allege that after defendant Miniard lifted plaintiff's left leg, plaintiff slid off the stool and fell to the ground of his own volition. (*Id.*, Fisher Decl., Ex. 4-6, Miniard Decl., ¶¶ 9-10). Once the left leg shackle was applied, plaintiff was stood up, walked to the transport vehicle, and was brought into the custody of the United States Marshal Service. (*Id.*, Fisher Decl., Ex. 5-6, Miniard Decl., ¶¶ 12-15). The Marshals Service ended up taking plaintiff to the hospital, where plaintiff received a CT scan of his spine and X-rays of his right ankle and lumbar spine. Plaintiff was diagnosed with "acute right ankle pain" and released from the hospital later that same day. (Pl. Dep., Doc. 32 at PAGEID 217-18). Plaintiff testified that his left ankle was not injured on September 13, 2019. (Pl. Dep., Doc. 32 at PAGEID 224).

Plaintiff submitted two declarations[4] in support of his Rule 56(d) motions, which are identical except that the latter adds several paragraphs. (*Compare* Doc. 39 at PAGEID 442-43 *with* Doc. 55 at PAGEID 634-37). In addition, plaintiff's "Motion to Suppres[s] deposition or Amend Statement" is unsworn but submitted under penalty of perjury consistent with 28 U.S.C. § 1746. (*See* Doc. 60 at PAGEID 674). As explained in the Court's prior Order (Doc. 65), plaintiff submitted this latter statement to clarify his deposition testimony regarding which of his

---

[4] Plaintiff styled these "affidavits," but they are in fact unsworn declarations made under penalty of perjury that the Court may consider in ruling on the summary judgment motion. *See* 28 U.S.C. § 1746; *Peters v. Lincoln Elec. Co*., 285 F.3d 456, 475 (6th Cir. 2002).

legs was first restrained and by whom. (*Compare* Pl.'s Dep., Doc. 32 at PAGEID 195-96; 202-05 (plaintiff's testimony that deputy Crawford shackled plaintiff's left ankle before defendant Miniard grabbed and shackled his right ankle) *with* Doc. 22, Butler County Jail video at 00:14-00:20 (showing that *deputy Crawford* shackled plaintiff's right ankle, and the right ankle was shackled *before* defendant Miniard shackled the left)).[5]

According to plaintiff, he repeatedly requested that the deputies use "bear claws" (larger restraints) to accommodate "the pins and rods in [his] ankle" but they refused. (Pl.'s Dep., Doc. 32 at PAGEID 194-98 and Pl.'s Decl., Doc. 55 at PAGEID 634). In his declaration, plaintiff states that defendant Miniard "heard [plaintiff] requesting . . . the Bear claws . . . because of [his] injury" before approaching. (Doc. 55 at PAGEID 634). Plaintiff states that on previous transports, other deputies had always acquiesced to this request to use the "bear claws." (Doc. 32 at PAGEID 195, 197-98). Plaintiff states that once defendant Miniard lifted his right leg and deputy Crawford secured the shackle, defendant Miniard "slammed plaintiff's right leg back down to the floor causing extreme pain." (Doc. 60 at PAGEID 669). Plaintiff states he told both deputies that the restraint was hurting and that it felt as if his ankle was broken. (*Id.*). Plaintiff testified that deputy Crawford had determined that he should get the "bear claws" until defendant Miniard intervened, said "I don't have time for this," and proceeded to "grab" and yank" plaintiff's ankle in the air, causing plaintiff to fall on the floor. (Doc. 32 at PAGEID 204). Plaintiff states that he was unable to get up because of his right ankle injury, and another deputy assisted defendant Miniard in lifting plaintiff off the ground. (Doc. 60 at PAGEID 669). Plaintiff states that while defendant Miniard escorted plaintiff to the transport van, plaintiff

---

[5] Plaintiff's supplemental response to defendants' motion for summary judgment includes a notarized statement regarding allegations that defendants forged certain grievance documents, but it is not signed or dated by plaintiff. (*See* Doc. 46 at PAGEID 553). Therefore, the Court may not consider plaintiff's statement for purposes of the summary judgment motions.

4

hopped on his left leg due to his injured right leg. (Doc. 60 at PAGEID 669). Plaintiff states, "While hopping on my left leg I told officers that my leg feel like it's broke and the restraint[s] are hurting me and they ignored me." (*Id.*). Plaintiff states that he remained in pain throughout his transport to the federal courthouse. (Doc. 55 at PAGEID 634). Plaintiff states that during the van transport, defendant Miniard threatened him and said he should have broken plaintiff's leg and right ankle because he did not think plaintiff's ankle had any injury. (*Id.*).

It is undisputed that, upon arriving at the federal courthouse, U.S. Marshal deputies determined that plaintiff's condition warranted medical attention, his leg restraints were removed, and he was taken to the hospital. Plaintiff was released back to the Butler County Jail that day same day.

On September 17, 2019, the Butler County Sheriff issued defendant Miniard a written reprimand related to the incident with plaintiff, which read:

> This letter shall serve as an official written reprimand to you, for violation of Policy and Procedures 2.20 Attention to Duty, 35. Unsatisfactory Performance.
>
> On Friday, September 13, 2019, Deputy Crawford was attempting to put ankle restraints on a federal inmate. The inmate was seated at the booking desk and was being uncooperative and argumentative. You assisted Deputy Crawford by lifting the inmate's right leg and successfully applying that restraint. You then lifted the inmate[']s left leg, and in the manner of doing so, caused the inmate to tilt back. At this point, it appears the inmate took this opportunity to use his momentum to intentionally fall from the seat. After reviewing the jail video and documentation from you and Deputy Crawford, I find your actions were unfavorable and exacerbated an already contentious situation.
>
> Continued conduct of this nature cannot and will not be tolerated by this Office, and further violations will be cause for more severe action against you to include consideration for termination by Sheriff Jones.

(Doc. 33-3 at PAGEID 367).

## II. Cross-Motions for Summary Judgment (Docs. 21, 33)

A. <u>Summary judgment standard</u>

5

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

The Court acknowledges the inconsistencies between plaintiff's deposition testimony and his declarations about the sequence of the placement of the leg restraints on his right and left legs and which of the deputies actually applied the restraints. Nevertheless, as explained in the

Court's previous Order (Doc. 65 at PAGEID 723), the overall substance of plaintiff's declaration concerning the use of force by defendant Miniard in forcefully pushing his right leg against the floor and refusal to remove the leg restraints after plaintiff's complained of his injuries is not "blatantly contradicted" by the videorecording. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd*, No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings)). A party's status as a pro se litigant, however, does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

7

B.  Plaintiff's motion for summary judgment (Doc. 21)

When the movant is the party with the burden of proof on a claim, the movant must show there is no genuine issue on all essential elements of his claim.  *In re Miller*, No. 10-60119, 2010 WL 3463296, at *2 (Bankr. N.D. Ohio Sept. 2, 2010) (citing *Prestige Capital Corp. v. Mich. Gage and Mfg., LLC*, 722 F. Supp. 2d 837, 842 (E.D. Mich. 2010) (when the movant bears the ultimate burden of persuasion, the "movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must satisfy that burden")); *Brixey v. Confer (In re Confer)*, 277 B.R. 374, 378 (Bankr. S.D. Ohio 2002) ("[T]his court may only grant summary judgment if the record supports that no genuine issues of material fact exist and that the [plaintiffs] have established all elements of their claim on which they bear the burden of persuasion at trial.").  To prevail on a claim brought under § 1983, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009)).

Plaintiff argues that "summary judgment should be granted because defendant purposely caused harm" and received a related written reprimand, demonstrating that defendants violated plaintiff's Fourth and Eighth Amendment rights.  (Doc. 21 at PAGEID 113).  Plaintiff, however, submitted no evidence in support of his motion for summary judgment.

Under Rule 56(c)(1):

A party asserting that a fact cannot be or is genuinely disputed *must support the assertion by*:

   (A) *citing to particular parts of materials in the record*, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

8

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* (emphasis added).

Plaintiff's motion for summary judgment is not sworn or otherwise submitted under penalty of perjury. Plaintiff includes a "facts to support" section, which is simply a narrative of his account and a series of legal conclusions. (Doc. 21 at PAGEID 119-22). Plaintiff's motion is devoid of any evidentiary support at all, let alone factual support sufficient to carry his burden on any of his claims. *See Miller*, 2010 WL 3463296, at *2. The Court therefore recommends that plaintiff's motion for summary judgment (Doc. 21) be denied on this basis.

C. Defendants' motion for summary judgment (Doc. 33)

Defendants contend that they are entitled to summary judgment because (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff has not raised a genuine issue of material fact that a constitutional violation occurred; (3) defendant Miniard is shielded from liability by the doctrine of qualified immunity; (4) plaintiff has failed to raise a genuine issue of material fact regarding his § 1983 claim against Butler County; (5) defendants are entitled to statutory immunity on plaintiff's state law claims and, as it relates to the intentional infliction of emotional distress claim, the applicable one-year statute of limitations; and (6) punitive damages cannot be awarded against a political subdivision and are not otherwise warranted against defendant Miniard in his individual capacity. Defendants support their motion with plaintiff's deposition; the declaration of Butler County Jail Warden Nicholas Fisher and related exhibits; and the declaration of defendant Miniard and related exhibits. (Docs. 32, 33-2, and 33-3).

1. *Exhaustion*

9

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, exhaustion of administrative remedies "is mandatory . . . and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA[.]'"  *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216).  "[T]he failure to exhaust 'must be established by the defendants.'"  *Id.* (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)).  Thus, defendants bear the burden of proof on exhaustion.  *Id.*

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance."  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90).  "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ."  *Woodford*, 548 U.S. at 90.  Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or

10

statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334

F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

Exhaustion may be excused where the grievance process is unavailable, which includes:

"(1) a grievance process that 'operates as a simple dead end,' (2) a grievance process that is 'so

opaque that it becomes, practically speaking, incapable of use,' or (3) 'when prison

administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation.'" *Wiley v. Ky. Dep't of Corr.*, No. 19-5368,

2020 WL 12933851, at *2 (6th Cir. Aug. 25, 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 643-44

(2016)).  In order to rely on the unavailability of the grievance process, plaintiff must first

demonstrate that he took "affirmative efforts" to comply with the prison's grievance process that

were "sufficient under the circumstances." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th

Cir. 2011)).

Defendants set forth the applicable grievance process via reference to the Butler County

Sheriff' Office's "Inmate Handbook," authenticated by Warden Fisher.  (Doc. 33-2, PAGEID

310 at ¶ 3).  The Inmate Handbook provides in relevant part:

> [T]he inmate shall follow the following steps in order to file a proper grievance:
> Access a formal Grievance Form on the kiosks.
> 1.   Upon receiving the grievance, the Deputy Warden shall review for
>      possible solution.  At no time will the inmate confront the staff member
>      about the problem.
> 2.   If a solution cannot be achieved by the Deputy Warden or the inmate is
>      not satisfied with the response from the Deputy Warden, then the
>      grievance will be forwarded to the Warden.  Appeals may be made by the
>      inmate by completing a new grievance addressed to the Warden.
> 3.   The Warden shall then review the grievance, make a decision and respond
>      in writing within five (5) working days.

(*Id.* at PAGEID 318).  Warden Fisher states in his declaration that plaintiff submitted a grievance

on September 27, 2019 and received a response denying the grievance on October 2, 2019.  (*Id.*

at PAGEID 310, ¶ 6, Ex. 4).  Warden Fisher further states he did not receive and was not otherwise aware of any attempt by plaintiff to appeal an inmate grievance related to the use of force at issue by filing a second grievance directly to the warden.  (*Id.*, PAGEID 310 at ¶¶ 7-8).

Plaintiff acknowledges there is a grievance process at the Butler County Jail and argues he exhausted all of his administrative remedies under that process.  In a statement made under penalty of perjury, signed and dated on the same date as his response to defendants' motion for summary judgment, plaintiff states that he "file[d a] grievance on September 13, 2019 after [he] missed [his] court date" and "file[d] a grievance to the Warden on September 16, 2019 and on October 10, 2019."  (Doc. 55 at PAGEID 634).

In reply, defendants contend that plaintiff has provided no evidence to support his assertion that he filed the necessary grievances.  Defendants also assert that plaintiff fails to cite "any record evidence" in support of his assertions, suggesting that plaintiff's declaration is self-serving.  (Doc. 48 at PAGEID 574).

The Court is presented with two contradictory declarations, both of which allege plaintiff filed grievances on different dates.  In addition, plaintiff states he filed a total of three grievances, two of which were directed to the warden, while defendants state plaintiff filed a single grievance and never filed an appeal to the warden.  Defendants are correct that plaintiff has not submitted any documentary evidence in support of his declaration stating that he filed a grievance on September 13, 2019, and grievance appeals to the warden on September 16 and October 10, 2019.  Nevertheless, the Sixth Circuit has recently determined that "a prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment on exhaustion even if the record lacks corroborating evidence." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022) (citing *Moran v. Al Basit LLC*, 788 F.3d 201, 206

12

(6th Cir. 2015)). "[W]here, as here, the evidence consists of one party's affidavit against another's, there is no rule of procedure that allows federal courts to disregard the plaintiff's testimony simply because it is self-serving." *Id*. (citing *Pierce v. Rowland*, 2021 WL 3929549, at *4-5 (6th Cir. Sept. 2, 2021) (citing *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010))). The Court concludes that plaintiff's statements, made under penalty of perjury, create a genuine issue of material fact regarding plaintiff's exhaustion of administrative remedies, and summary judgment is therefore not appropriate on this basis. *See id.* at 296 (an "uncorroborated affidavit is sufficient to create a genuine dispute of material fact regarding whether [an inmate complied with the applicable grievance process]").

### 2. *Excessive force*

Defendants argue that plaintiff cannot establish an underlying unconstitutional use of force because plaintiff's injury was *de minimis*, plaintiff's account of the use of force is contradicted by the videorecording, and defendant Minard's actions were taken in an effort to maintain or restore discipline and not to cause harm.

As an initial matter, the Court must determine which constitutional amendment and standard applies to plaintiff's excessive force claims. Excessive force claims can be resolved under the Fourth, Eighth or Fourteenth Amendments, depending on the plaintiff's status at the time of the incident. *Coley v. Lucas,* 799 F.3d 530, 537 (6th Cir. 2015). "While the Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens, the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons." *Hopper v. Plummer*, 887 F.3d 744, 751 (6th Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)). The Fourteenth Amendment's Due Process Clause governs a pretrial detainee's claims of

13

excessive force and prohibits all "punishment."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98, 400 (2015) ("pretrial detainees (unlike convicted prisoners) cannot be punished at all"; the Eighth Amendment, in contrast, prohibits only punishment that is "cruel and unusual.").  The inquiry under the Fourth or Fourteenth Amendment is "whether the plaintiff has shown that the 'force purposely or knowingly used against him was objectively unreasonable.'"  *Hopper v. Plummer*, 887 F.3d 744, 752 (6th Cir. 2018) (quoting *Kingsley*, 576 U.S. at 397) (noting that the test "under either amendment," requires the court to "employ the same objective test for excessive force").  In contrast, under the Eighth Amendment, a convicted prisoner "must satisfy both an objective and a subjective component" to make out an excessive-force claim.  *Hopper*, 887 F.3d at 752 (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

As plaintiff was a pretrial detainee on September 13, 2019, the Fourteenth Amendment governs the Court's analysis of his excessive force claims.[6]  Thus, the standard the Court employs "is solely an objective one."  *Kingsley*, 576 U.S. at 397.  To establish his claims against defendant Miniard, plaintiff must show that the force used by defendant Miniard was purposeful or knowing (as opposed to accidental) and was "objectively unreasonable."  *Id.*  Determining whether the force used against plaintiff was objectively unreasonable, the Court must examine defendant Miniard's use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  *Id.*  The Court must also consider the "legitimate interests that stem from [the government's] need to

---

[6] Defendants argue that plaintiff cannot "satisfy either the objective or the subjective component" of the Eighth Amendment excessive-use-of-force test.  (Doc. 33 at PAGEID 292).  Contrary to defendants' argument, the Eighth Amendment does not direct the Court's analysis of plaintiff's excessive force claims.

manage the facility in which the individual is detained. . . ." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).[7]

Factors relevant to the objective reasonableness of force applied include the following non-exhaustive list:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. As it relates to handcuffing specifically, plaintiff must raise a genuine issue of material fact that "(1) [he] complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) [he] experienced 'some physical injury' resulting from the handcuffing." *Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)).

The Court construes plaintiff's use of force claims to include: (1) defendant Miniard's refusal to remove the leg shackles after plaintiff complained his right ankle felt broken and the cuffs were too tight; and (2) defendant Miniard's use of force during the ankle-restraint process.

Defendants present evidence that plaintiff failed to comply with lawful orders to have his ankles cuffed and shuffled his feet in a way to resist the cuffing. Deputy Crawford assessed that the standard leg restraints were sufficient and so advised plaintiff. Plaintiff continued to argue with Deputy Crawford about his request for the "bear claw" restraints when defendant Miniard approached to assist. After defendant Miniard assisted Deputy Crawford with the placement of the cuff on plaintiff's right ankle, defendant Miniard lifted plaintiff's left leg to apply a shackle.

---

[7] The Court construes plaintiff's complaint liberally and therefore does not find persuasive defendants' argument that plaintiff did not plead for relief under the correct constitutional provision. *See Spotts*, 429 F.3d at 250.

Defendants' witnesses allege that after defendant Miniard lifted plaintiff's left leg, plaintiff purposefully slid off the stool and fell to the ground.

Plaintiff states, under penalty of perjury, that defendant Miniard heard plaintiff ask Deputy Crawford for the "bear claw" cuffs for his ankles because of his preexisting right ankle injury, and when defendant Miniard observed this interaction between Deputy Crawford and plaintiff, defendant Miniard stated, "I don't have time for this." Plaintiff states that defendant Miniard grabbed plaintiff's right leg and forcefully yanked plaintiff's right ankle into the air. After Deputy Crawford applied the restraint to plaintiff's right ankle, defendant Miniard forcefully pushed plaintiff's leg down, causing plaintiff's right ankle to strike the floor. Defendant Miniard then lifted plaintiff's left leg above plaintiff's shoulder height, causing plaintiff to slip off the bench onto his back and strike his head. Plaintiff denies that he scooted himself off the bench onto the floor. (Doc. 32 at PAGEID 205 ("Q. Now, tell me how you ended up on the ground. A. . . . . [W]hen [defendant Miniard] grabbed [my leg], I slipped from being on the stool. . . . . [I]t's like he tripped me."). Plaintiff states he complained to both officers that his ankle felt like it was broken and that the cuffs were too tight on his ankles but neither removed the ankle restraints. (*See* Doc. 32 at PAGEID 195; Doc. 60 at PAGEID 669). Plaintiff also states that the application of the "standard size restraints caus[ed his] ankle to swell up" and "severe pain in [his] . . . right ankle." (*Id.*). Plaintiff also states that he suffered in the restraints for over an hour in the transport vehicle. Upon arrival at the federal court, plaintiff's ankle restraints were removed by the U.S. Marshals, and he was taken to the hospital for testing and treatment.

The Court has reviewed the videorecording, which reflects that while plaintiff was seated on the bench with his hands secured in cuffs, defendant Miniard grabbed plaintiff's right ankle with considerable force; forcefully pushed his right leg and ankle to the floor after the right ankle

cuff was applied; lifted plaintiff's left leg above shoulder height, which may have caused

plaintiff to fall the floor; secured plaintiff's left leg cuff; lifted plaintiff off the floor; and held

plaintiff's arm while plaintiff limped out of the booking area.[8]

Viewing the record in a light most favorable to plaintiff, the Court finds there are genuine

issues of material fact as to whether the force used by defendant Miniard was objectively

reasonable.  As to the use of the standard size leg restraints, plaintiff has presented evidence that

he requested the larger "bear claw" restraints given his preexisting ankle injury.  Plaintiff

presents evidence that on other transport visits to the federal court, deputies acquiesced to his

request for the larger leg cuffs.  Plaintiff's evidence shows that he complained about the tightness

of the restraints, defendant Miniard ignored plaintiff's complaints, and plaintiff experienced a

physical injury.  *See Hughey*, 3 F.4th at 289 (explaining that courts are to apply the handcuffing

test first and then consider whether force related to the handcuffing was objectively reasonable).

There is no dispute that defendant Miniard heard plaintiff's request for larger leg restraints.  In

his own declaration, defendant Miniard admits that he heard plaintiff "verbally demand . . . a

different pair of shackles on [his] ankles."  (Doc. 33-3, PAGEID 365 at ¶ 7).  Plaintiff's

declaration states that defendant Miniard "heard [him] requesting . . . the Bear claws . . . because

of [his preexisting ankle injury]."  (Doc. 55 at PAGEID 634).  Given defendant Miniard's

proximity to plaintiff in the booking area, a fact-finder could infer that defendant Miniard

overheard the reason for plaintiff's request for larger ankle restraints and, nevertheless,

disregarded plaintiff's subsequent request to remove them.  *See Walton v. City of Southfield*, 995

---

[8] The Court acknowledges the inconsistencies between plaintiff's deposition testimony and his declarations about the sequence of the placement of the leg restraints on his right and left legs and which of the deputies actually applied the restraints.  Nevertheless, as explained in the Court's previous Order (*see* Doc. 65 at PAGEID 723) the overall substance of plaintiff's declaration concerning the use of force by defendant Miniard in forcefully pushing his right leg against the floor and refusal to remove the leg restraints after plaintiff complained of his injuries is not "blatantly contradicted" by the videorecording.  *Scott*, 550 U.S. at 380.

F.2d 1331, 1342 (6th Cir. 1993) (holding that whether the defendant knew of the plaintiff's preexisting shoulder injury was a question of fact relevant to the excessive-force analysis), *superseded by statute on other grounds as stated in Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007). Defendants also argue that the videorecording shows and plaintiff admits to resisting. (*See* Doc. 48 at PAGEID 566). A reasonable jury, however, could find that what defendants coin plaintiff's "resistance" to be a reasonable medical request given his preexisting ankle impairment.

The video also shows that following the ankle-restraint process, defendant Miniard held plaintiff's arm while plaintiff limped as he was escorted to the transport van, supporting plaintiff's claim of an injury to his right ankle. Defendants argue that plaintiff's injury was ultimately *de minimis*, as plaintiff was diagnosed with "acute right ankle pain," suggesting defendant Miniard did not use excessive force. The injury here, however, was not *de minimis*. Defendants do not dispute that plaintiff was taken to the hospital as a result of the use of force. *See Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (distinguishing an encounter resulting in a hospital visit, doctor visit, or bruise from the *de minimis* use of force at issue); *United States v. Budd*, 496 F.3d 517, 531 (6th Cir. 2007) (inmate's testimony that he requested medical attention and had bumps and bruises was consistent with more than *de minimis* force). In addition, upon his arrival to the federal court, U.S. Marshal deputies, who are laypeople, recognized plaintiff's obvious injury and transported him to the hospital for testing and treatment, strongly suggesting that the continued use of standard size leg restraints on plaintiff's right ankle was not objectively reasonable.

As to defendant Miniard's use of force while plaintiff was seated on the bench in the booking area, construing the evidence in a light most favorable to plaintiff, the Court finds issues

18

of fact as to whether defendant Miniard's use of force in the ankle-restraint process was objectively unreasonable. Plaintiff submits evidence that after he requested larger leg restraints, defendant Miniard exclaimed, "I don't have time for this." The video shows defendant Miniard forcefully lifting plaintiff plaintiff's right leg to be cuffed, then pushing it to the ground. Plaintiff states his ankle struck the ground and felt like it was broken. The video also shows defendant Miniard lifting plaintiff's left leg to shoulder height, which may have caused plaintiff to fall off the bench and onto his back. At the time, plaintiff's hands were restrained in cuffs, and he was unable to break his fall. Defendants present evidence that plaintiff himself caused the fall, but plaintiff's deposition testimony is to the contrary. Whether plaintiff's fall was volitional is an issue of fact. Given that plaintiff posed no security threat, there is certainly an issue of fact as to whether this component of defendant Miniard's use of force was objectively reasonable. *See Kingsley*, 576 U.S. at 397. Whether plaintiff's continued requests for larger leg restraints is viewed as "active[] resistance" or a reasonable request to accommodate a medical condition is an issue of fact. *Id.*

In addition, while certainly not dispositive of the issue, defendant Miniard was disciplined for his conduct during the use of force. (*See* Doc. 33-3 at PAGEID 367). Finally, the fact that defendant Miniard did not actually place the right ankle restraint on plaintiff is not dispositive, given the evidence of defendant Miniard's use of force during the ankle-restraint process discussed above and ignoring plaintiff's complaints of pain and injury to his right ankle subsequent to that process. *See Moderwell v. Cuyahoga Cnty., Ohio*, No. 20-3879, 2021 WL 1897949 (6th Cir. May 12, 2021).

19

Construing all of the evidence in plaintiff's favor compels the conclusion that plaintiff has raised a genuine issue of material fact regarding whether defendant Miniard used unconstitutionally excessive force against plaintiff during the September 13, 2019 incident.

However, the Court agrees with defendants' argument that plaintiff has not presented any evidence to demonstrate that defendant Jones can be held individually liable for an excessive use of force.  Plaintiff has presented no evidence that defendant Jones used excessive force against him or was even present during the incident in the booking area or transport.  "[T]o impose individual liability upon a law officer for engaging in unconstitutional misconduct, it is a plaintiff's burden to specifically link the officer's involvement to the constitutional infirmity. . . ."  *Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016).  In the absence of any evidence whatsoever showing defendant Jones had any individual involvement in the shackling incident on September 13, 2019, summary judgment should be granted for defendant Jones in his individual capacity.

### 3. *Qualified immunity*

Defendants argue that defendant Miniard is nevertheless shielded from liability based on the doctrine of qualified immunity.  Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity insulates government officials not only from individual liability for money damages, but it also shields them from the burdens and expenses of litigation and trial.  *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part*, *Pearson v. Callahan,* 555 U.S. 223 (2009).

There are two steps to the qualified immunity analysis: (1) whether the officer's conduct violated a constitutional right, and (2) and if the first step is satisfied, whether the right was clearly established at the time of the injury. *Saucier,* 533 U.S. at 201.  In its discretion, the court may choose to address either question first given the particular circumstances of the case before it. *Pearson,* 555 U.S. at 236.  Once a defendant raises the qualified immunity defense, plaintiff has the burden to demonstrate that the official is not entitled to qualified immunity. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir 2010).  For the court to find that a constitutional right is clearly established, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As explained above, the Court concludes that plaintiff has raised genuine issues of material fact as to whether defendant Miniard's use of force was unconstitutionally excessive. Defendants argue, however, that plaintiff has not pointed to "clearly established, existing precedent" that puts the constitutional question "beyond debate." *Cunningham v. Shelby Cnty., Tenn.*, 994 F.3d 761, 764 (6th Cir. 2021) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

The right to be free from excessively forceful or unduly tight handcuffing is clearly established for purposes of the qualified immunity analysis. *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001).  *See Strickland v. City of Detroit*, 995 F.3d 495, 508 (6th Cir. 2021) (citing *Ouza v. City of Dearborn Heights,* 969 F.3d 265, 271, 278 (6th Cir. 2020) (finding right to be free of excessive handcuffing clearly established by December 2014)).  *See also Walton*, 995 F.2d at 1342 (denying qualified immunity to officer who handcuffed arrestee behind her back despite her request to not handcuff her because of shoulder injury).  Therefore, defendant Miniard is not entitled to qualified immunity on plaintiff's unduly tight cuffing claim.

21

In addition, it is also clearly established that inflicting "gratuitous violence" upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial. *Morrison*, 583 F.3d at 407. *See also Coley*, 799 F.3d at 540 (assaults on "subdued, restrained and nonresisting detainees" are prohibited under the Fourteenth Amendment); *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006) (denying qualified immunity to officer who slapped face of handcuffed suspect who was verbally unruly). On this basis, the Court concludes that defendant Miniard is not entitled to qualified immunity in connection with the use of force in the ankle-restraint process.

Plaintiff has therefore met both prongs of the qualified-immunity analysis, and defendant Miniard is not entitled to qualified immunity at this juncture.

### 4. *Section 1983: official-capacity claim*

To the extent that plaintiff sues defendant Sheriff Jones in his official capacity, his claims are equivalent to claims against Butler County. *Powers v. County of Lorain,* 259 F. App'x 818, 822 n.2 (6th Cir. 2008) (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989)). *See also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (An official capacity suit is generally "only another way of pleading an action against an entity of which an officer is an agent.").

Plaintiff claims that Butler County "knew or should have known that Defendant Miniard should not have been placed in a position over detainees that could not defend themselves from Defendant's wrongful conduct" and "negligently retained and/or failed to provide supervision of Defendant Miniard while he executed his duties." (Doc. 1-1 at PAGEID 7). Defendants argue that there was no underlying constitutional violation by Butler County officials to support this

claim.  Defendants also argue that plaintiff's allegations are conclusory and do not state a viable § 1983 municipal liability claim.

Butler County may not be held liable under § 1983 based on the theory of *respondeat superior* for an injury inflicted solely by its employee.  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  Instead, plaintiff must show that "through its deliberate conduct, the [county] was the 'moving force' behind the injury alleged."  *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 879-80 (6th Cir. 2020) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)).  Plaintiff can make this showing by demonstrating "that the [county] had a 'policy or custom' that caused the violation of his rights." *Id.* at 880 (quoting *Monell*, 436 U.S. at 694).  Plaintiff must establish "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations."  *Burgess*, 735 F.3d at 478.

County liability premised on the "failure to supervise" is rare to arise or be proven.  *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010) (The "'failure to supervise' theory of municipal liability is a rare one.  Most agree that it exists and some allege they have seen it, but few actual specimens have been proved.").  This claim requires a showing of deliberate indifference on the part of Buter County.  *Id.*  Deliberate indifference, in turn, "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures."  *Amerson v. Waterford Twp.*, 562 F. App'x 484, 490 (6th Cir.

2014) (discussing the failure to train) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815 (6th Cir. 2005)).[9]

Plaintiff makes no responsive argument related to his failure-to-supervise claim other than to state that "both defendant[s] are being sued in [their] individual and official capacities" (Doc. 38 at PAGEID 432) and to make a reference to defendant Miniard's related discipline (Doc. 46 at PAGEID 550). Defendants have submitted uncontroverted evidence that Butler County was not aware of prior unconstitutional actions by defendant Miniard. (*See* Miniard Decl., Doc. 33-3, PAGEID 366 ("The September 17, 2019 written reprimand . . . is my only instance of employment discipline.")). As plaintiff has provided no more than conclusory allegations on his official capacity claim against defendant Jones, summary judgment should be granted on this claim. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 (1st Cir. 1995) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")).

5.  *State law claims*

Defendants argue that plaintiff's state law claims are precluded by statutory immunity under Ohio's Political Subdivision Tort Liability Act (PSTLA). *See* Ohio Rev. Code § 2744.01 *et seq*. Defendants also argue that plaintiff's intentional infliction of emotional distress claim, in particular, is barred by Ohio's one-year statute of limitations. Plaintiff responds that PSTLA immunity is inapplicable because defendants' actions were manifestly outside the scope of their

---

[9] Plaintiff's allegations do not fall within the "narrow" exception to the requirement of a pattern of similar violations, such as where police officers "obvious[ly]" needed training in the constitutional constraints on the use of deadly force." *Connick v. Thompson*, 563 U.S. 51, 64 (2011) (discussing *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)).

24

employment duties and were otherwise taken with malicious purpose, in bad faith, or in a wanton or reckless manner.

Plaintiff seems to concede that municipal liability under the PSTLA generally protects defendants from individual liability but argues that exceptions to immunity apply.  Plaintiff relies on Ohio Revised Code § 2744.03(A)(6):

> [T]he employee is immune from liability *unless* one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. . . .

*Id.* (emphasis added).

While plaintiff offers nothing beyond conclusory statements to suggest that either defendant took action "manifestly outside" his employment or official responsibilities for purposes of subsection (a), plaintiff has raised a genuine issue of material fact as to whether subsection (b) applies to defendant Miniard.  "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result."  *See Wiley v. City of Columbus, Ohio*, 36 F.4th 661, 671 (6th Cir. 2022) (quoting *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012)).  "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."  *Id.* (quoting *Anderson*, 983 N.E.2d at 273).[10]  Plaintiff has presented evidence that defendant Miniard knew about plaintiff's preexisting ankle injury, but—because he was exasperated—nevertheless handled plaintiff's ankle in such a way as to cause harm.  (Doc.

---

[10] Gross negligence under Ohio law, too, requires the showing of a wanton or reckless state of mind.  *See id.* at 671.

32 at PAGEID 204; Doc. 55 at PAGEID 634). Plaintiff has also presented evidence that after telling defendant Miniard that he was in significant pain, defendant Miniard responded by threatening him and ignoring his complaints. (Doc. 55 at PAGEID 634). This evidence raises a genuine issue of material fact to be presented to the trier of fact as to whether defendant Miniard acted in a wanton or reckless manner. *See Hopper v. Phil Plummer*, 887 F.3d 744, 759 (6th Cir. 2018) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 n.1 (6th Cir. 2009)) ("When federal qualified immunity and Ohio state-law immunity under § 2744.03(A)(6) rest on the same questions of material fact, we may review the state-law immunity defense 'through the lens of the federal qualified immunity analysis.'"). Because plaintiff has presented no evidence regarding defendant Jones's state of mind, however, defendant Jones is immune from plaintiff's state law claims. *See Wiley*, 36 F.4th at 671.

To the extent that plaintiff asserts a state law negligent-retention claim against defendant Jones in his official capacity in his fourth cause of action, however, the county is shielded from liability under the PSTLA. *See* Ohio Rev. Code § 2744.02(A)(1) ("[A] a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."); *id.* at §§ 2744.01(C)(2)(a), (b), and (i) (describing governmental functions that Butler County exercised in this case). Therefore, defendants' motion should be granted as to plaintiff's fourth cause of action whether it is construed as a § 1983 claim or a state law negligent-retention claim against Butler County.

Plaintiff's intentional infliction of emotional distress claim is based on defendant Miniard's allegedly "intentional acts of offensive contact." *Doe v. First United Methodist*

*Church*, 629 N.E.2d 402, 407 (Ohio 1994), *superseded by statute on other grounds as stated in Pratte v. Stewart*, 929 N.E.2d 415, 419 (Ohio 2010). Because of that "essential character[,]" the one-year statute of limitations for assault and battery applies and precludes this claim. *Id.* (quoting *Love v. Port Clinton*, 524 N.E.2d 166, syllabus (Ohio 1998)).

      6. *Punitive damages*

Under the PSTLA, punitive damages are not permitted against a political subdivision. *See* Ohio Rev. Code § 2744.05 ("[I]n an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function: (A) Punitive or exemplary damages shall not be awarded."). This same immunity does not extend, however, to "government employees sued in their individual capacity where the employee's 'acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.' Ohio Rev. Code § 2744.03(A)(6)(b)." *Range v. Douglas*, 878 F. Supp. 2d 869, 896 (S.D. Ohio 2012), *aff'd in part, dismissed in part*, 763 F.3d 573 (6th Cir. 2014). As noted above, the Court concludes that plaintiff has raised a genuine issue of material fact regarding whether defendant Miniard had such a state of mind. As such, the question of punitive damages against defendant Miniard should be submitted to the trier of fact.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's motion for summary judgment (Doc. 21) be **DENIED**; and

2. Defendants' motion for summary judgment (Doc. 33) be **GRANTED in part** and **DENIED in part** as explained herein.

Date: 2/9/2023

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

QIAN WILLIAMS,                                    Case No. 1:22-cv-1
      Plaintiff,                              Dlott, J.
                                                 Litkovitz, M.J.

      vs.

CHRIS MINIARD, *et al.*,
      Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).